**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| RIVERVIEW FARMS, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | No. 18-cv-1099 L |
| v. | ) | |
| | ) | Judge Richard A. Hertling |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

## MOTION TO COMPEL RESPONSIVE DISCOVERY
## AND FOR DISCOVERY RELIEF

COME NOW Plaintiffs, Riverview Farms, et al., ("**Plaintiffs**"), by and through their undersigned counsel, and hereby file their Motion to Compel Responsive Discovery and Documents and for Discovery Relief from Defendant United States of America (the "**Government**" or "**Defendant**"). Pursuant to RCFC 26 and 37, Plaintiffs move the Court for an order compelling Defendant to sufficiently respond to and produce documents pursuant to Plaintiffs' First Set of Interrogatories and Plaintiffs' First Request for Production (collectively, "**discovery requests**").

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES……………………………………………....ii

I.    PROCEDURAL BACKGROUND…………………………………………..…1

II.   THE LAW………………………………………………………………………2

III.  PLAINTIFFS' DISCOVERY AND THE GOVERNMENT'S OBJECTIONS….4

    A.  Defendant's Objections to Plaintiffs' Interrogatories………………………………………..……………………4

    B.  Defendant's Objections to Plaintiffs' Request for Production…………………………………………………………8

IV.   ARGUEMENT………………………………………………………………9

    A.  Defendant's Interrogatory Responses Are Deficient………………………..……9

       i.    Defendant's Objections to Plaintiffs' Interrogatories Are Improper…………………………………………………9

       ii.   Defendant Does Not Properly Invoke RCFC 33(d)………………10

    B.  Defendant's Document Production is Deficient……………...........…………12

       i.    Defendant's Objections to Plaintiffs' Requests for Production Are Improper…………………………………………………12

       ii.   Defendant Must Organize and Label Documents to Correspond to the Categories in the Request for Production…………………………15

       iii.  The Government Should Also Be Required to Identify and Remove any Non-Responsive Documents or Documents That Have no Relevance to This Litigation…………………………………………………...19

    C.  Defendant Should Bear the Costs Incurred to Bring this Motion…………….21

    CONCLUSION…………………………………………………………22

# TABLE OF AUTHORITIES

## Cases

*3rd Eye Surveillance, LLC v. United States*,
143 Fed. Cl. 103, 109 (2019)....................................................................3

*AAB Joint Venture v. United States*,
75 Fed. Cl. 448, 457-58 (2007)...............................................9, 11, 12, 13

*Ak Chin Indian Community v. United States*,
85 Fed. Cl. 397, 400 (2009)...................................................................20

*Big Easy Studios, LLC v. United States*,
147 Fed. Cl. 539, 544 (2020)..................................................................3

*Brubaker Amusement Co. v. United States*,
304 F.3d 1349, 1356 (Fed. Cir. 2002).......................................................3

*CBT Flint Partners v. Return Path, Inc.*,
737 F.3d 1320 (Fed. 2013)...................................................................19

*CENTECH Grp., Inc. v. United States*,
No. 19-1752, 2021 WL 3027158, at *4 (Fed. Cl. July 16, 2021)....................3

*Fairholme Funds, Inc. v. United States*,
132 Fed. Cl. 391, 392-93 (2017).............................................................21

*Goodeagle v. United States*,
124 Fed. Cl. 43, 45 (2015)....................................................................18

*Graske v. Auto-Owners Ins. Co.*,
647 F. Supp.2d 1105, 1108 (D.Neb. 2009)................................................18

*Hagemeyer N. Am., Inc. v. Gateway Data Scis. Corp.*,
222 F.R.D. 594, 598 (E.D.Wis.2004).................................................16, 19

*Hickman v. Taylor*,
329 U.S. 495, 507 (1947)........................................................................3

*In re Sulfuric Acid Antitrust Litig.*,
231 F.R.D. 351, 364 (N.D. Ill. 2005)..................................................10, 11

*Katz v. Batavia Marine & Sporting Supplies, Inc.*,
984 F.2d 422, 424 (Fed. Cir. 1993)………………………………………………2

*Kansas City Power & Light Co. v. United States*,
139 Fed. Cl. 546, 564 (2018)……………………………………………………3

*Montania v. Aetna Cas. & Sur. Co.*,
153 F.R.D. 620, 621 (N.D. Ill. 1994)…………………………………………20

*Osage Tribe of Indians of Oklahoma v. United States*,
 87 Fed. Cl. 338 (2009)…………………………………………………………20

*Perfect Form Mfg. LLC v. United States*,
142 Fed. Cl. 778, 787 (2019)…………………………………………………15

*Petro-Hunt, L.L.C. v. United States*,
114 Fed. Cl. 143, 144 (2013)……………………………………………………3

*Precision Pine & Timber, Inc. v. United States*,
2001 WL 1819224, at *4 (Fed. Cl. Mar. 6, 2001)……………………………21

*Pueblo of Laguna v. United States*,
60 Fed. Cl. 133, 138 (Fed. Cl. 2004)…………………………………………19

*Reedhycalog UK, Ltd. v. United Diamond Drilling Services, Inc.*,
Case 6:07-cv- 00251-LED, *4 (E.D. Tex. 2008)………………………………19

*Renda Marine, Inc. v. United States*,
58 Fed. Cl. 57, 64 (2003)…………………………………………………18, 19

*Residential Constructors, LLC v. ACE Prop. & Cas. Ins. Co*,
2006 WL 1582122, at *2 (D. Nev. June 5, 2006)……………………………20

*SEC v. Collins & Aikman Corp.*,
256 F.R.D. 403, 411 (S.D.N.Y.2009)…………………………………………16, 17

*Securiforce Int'l Am., LLC v. United States*,
127 Fed. Cl. 386, 400 (2016)……………………………………………………3

*Thales Visionix, Inc. v. United States*,
149 Fed. Cl. 38, 47………………………………………………………………2

*United Affiliates Corp. v. United States*,
147 Fed. Cl. 412, 419 (2020)……………………………………………………3

*Wagner v. Dryvit Sys., Inc.,*
208 F.R.D. 606, 610–11 (D.Neb.2001)……………………………….…………..…..16

*Williams v. Taser Int'l, Inc.,*
2006 WL 1835437, at *7 (N.D. Ga. June 30, 2006)………………………..……..18

## **Rules**

FRCP 26……………………………………………………………………….…..2, 3

FRCP 33……………………………………………………………………....…11

RCFC 26(g)…………………………………………………………………………21

RCFC 33(d)…………………………………………………………10, 11, 12

RCFC 34……………………………………………………………….…..passim

RCFC 37………………………………………………….…………………3, 21, 22

## I.        PROCEDURAL BACKGROUND

Plaintiffs filed this action on July 26, 2018 to vindicate their rights under the Fifth Amendment to just compensation for land taken for public use by the United States. The Army Corps of Engineers' increasing manipulation of the Ohio and Mississippi River has caused excessive and late season flooding of Plaintiffs' lands that constitutes a compensable taking. On November 20, 2019, the Court deferred the Government's Motion to Dismiss pending trial, and on December 6, 2019, the Court ordered jurisdictional discovery on eight bellwether plaintiffs.

Plaintiffs served their First Set of Interrogatories and Requests for Production on May 4, 2020. On or about April 23, 2021, the Government mailed to plaintiffs a hard drive with 6,267 documents.  Plaintiffs received the hard drive on April 27, 2021. Due to the volume of documents and pages, Plaintiffs were not able to begin the document review until they were fully uploaded to their document management platform on June 4, 2021.  Even then, the Government did not provide a proper production log or label the documents to correspond to any of the requests making it almost impossible to determine what the Government produced or responded to. The Government produced an additional 1,000 documents comprised of approximately 4,000 pages that were received by Plaintiffs on July 1, 2021. See Exhibit D. Plaintiffs then sent the Government multiple letters concerning discovery deficiencies and numerous emails. *See* e.g. Exhibit A and Exhibit G. Counsel for Plaintiffs and the Government conferred on December 13, 2022, to determine whether the parties were at an impasse. On January 4, 2022, the Government sent Plaintiffs a flash drive containing an additional 3,359 documents comprised of tens of thousands of pages Plaintiffs have not yet been able to completely review. See Exhibit E. On February 25, 2022, the Government sent an email providing that they have supplemented their production and have uploaded supplemental documents to Box.com. Exhibit F. To date, none of

the productions by the government have been organized or labeled, which has put a great burden on Plaintiffs. *See* e.g. Exhibit H; Exhibit I; Exhibit K. On each occasion the Government made generalized objections to the scope of Plaintiffs' requests, insisting that the documents Plaintiffs seek are in public domain or inaccessible because of COVID-19, withholding documents for privilege without supplying a privilege log until February 25, 2022, and tendering deficient productions. Exhibit B.

Plaintiffs diligently have sought to resolve with Defendant the issues regarding their jurisdictional discovery requests without Court intervention. Undersigned counsel has sent letters, emails, and engaged in phone conversations, but Defendant refuses to adequately respond. All of Plaintiffs' interrogatory requests and requests for document production are tailored specifically to address the jurisdictional issue mandated by the Court for the bellwether Plaintiffs: the accrual of the claim and the cumulative and latent effect of river control structures based on Plaintiffs' allegations in their complaint. Each of the Plaintiffs' discovery requests are focused on information related to the timeliness of Plaintiffs' claims: (1) the timing of Defendant's actions with respect to water surface elevations and river control structures; (2) the timing of causal relationship between river control structures and water surface elevations; and (3) when Defendant had knowledge of this causal relationship.

## II.    THE LAW

On December 6, 2019, this Court ordered jurisdictional discovery to develop the record on the accrual date of Plaintiffs' claims. In general, a party may obtain discovery of any matter that (1) is "not privileged" and (2) "is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1); *see Thales Visionix, Inc. v. United States,* 149 Fed. Cl. 38, 47; *Cf. Katz v. Batavia Marine & Sporting Supplies, Inc.,* 984 F.2d 422, 424 (Fed.

Cir. 1993). The Court of Federal Claims generally "afford[s] a liberal treatment to the rules of discovery." *Big Easy Studios, LLC v. United States*, 147 Fed. Cl. 539, 544 (2020) (citing *Securiforce Int'l Am., LLC v. United States*, 127 Fed. Cl. 386, 400 (2016) *aff'd*, 879 F.3d 1354 (Fed. Cir. 2018), *and cert denied*, —— U.S. ——, 139 S. Ct. 478, 202 L.Ed.2d 375 (mem.) (2018). The Court has broad discretion to manage discovery. *See United Affiliates Corp. v. United States,* 147 Fed. Cl. 412, 419 (2020)*; Brubaker Amusement Co. v. United States,* 304 F.3d 1349, 1356 (Fed. Cir. 2002).

A party may "move for an order compelling an answer, designation, production, or inspection." RCFC 37(a)(3)(B). A party dissatisfied with the responses to its discovery requests may seek an order from the court compelling a more satisfactory response. *Kansas City Power & Light Co. v. United States*, 139 Fed. Cl. 546, 564 (2018). With a few exceptions, the prevailing party in a motion to compel is entitled to reasonable expenses and attorney's fees under RCFC 37(a)(5)(A). *See CENTECH Grp., Inc. v. United States*, No. 19-1752, 2021 WL 3027158, at *4 (Fed. Cl. July 16, 2021). When deciding motions to compel, the "court must balance potentially conflicting goals," *Petro-Hunt, L.L.C. v. United States*, 114 Fed. Cl. 143, 144 (2013), with the understanding that "[m]utual knowledge of all relevant facts gathered by both parties is essential to proper litigation," *Hickman v. Taylor*, 329 U.S. 495, 507, 67 S. Ct. 385, 91 L. Ed. 451 (1947) *superseded by statute on other grounds*, Fed. R. Civ. P. 26(b)(3). The resolution of a motion to compel under RCFC 37 is also committed to the discretion of the court. *See 3rd Eye Surveillance, LLC v. United States*, 143 Fed. Cl. 103, 109 (2019).

### III.   PLAINTIFFS' DISCOVERY AND THE GOVERNMENT'S OBJECTIONS

#### A.  Defendant's Objections to Plaintiffs' Interrogatories

**INTERROGATORY NO. 3:**  Identify each river training structure on the Mississippi River from St. Louis, Missouri to the Tennessee state line (Upper Mississippi River mile marker 208 to 0; Lower Mississippi River mile marker 954 to 737), including the mile marker, length of the structure, the height of the structure above sea level, and the date the structure was completed.

> **Defendant's Objection:** The United States objects that this interrogatory is vague, overbroad, and unduly burdensome as it is unclear what "completed" means, it involves areas not reasonably related to plaintiffs' lawsuit, spanning hundreds of river miles away from the closest bellwether plaintiff, and there is no limit to time period or specific river training structures.  The United States objects to the extent there is publicly available information already accessible to plaintiffs and to the extent information is not readily accessible due to the COVID-19 pandemic.

> The United States further objects to the extent this request seeks information outside the scope of jurisdictional fact discovery relating to the eight bellwether plaintiffs.

> Subject to and without waiving any objections, the United States responds that it has produced documents, and will further supplement its production of documents as needed, with information responsive to this interrogatory for portions of the river adjacent to the bellwether plaintiffs' parcels, as well as for the Middle Mississippi River up to mile marker 195.  The United States also responds that any heights above sea level provided are approximate.  The United States' production on February 17, 2021, which included 6,267 documents, contains many documents with information responsive to this interrogatory including, but not limited, to the following:   US_0092040 – US_0092244, US_0031691 – US_0031669, US_0031855 – US_0031825, US_0032140 – US_0031925, US_0086464 – US_0086491.

> **Plaintiffs' Response:**  Plaintiffs disagree that this interrogatory is vague, overbroad, and unduly burdensome.  To the extent the Defendant objects because it is unclear what "completed" means it may consult Websters Dictionary or its own records to determine what "completed" means and when said projects were completed.  Furthermore, the completion date is directly relevant to claim accrual based on the allegations in the complaint and Defendant's argument that Plaintiffs' claims are untimely.

> Plaintiffs disagree that this interrogatory involves areas not reasonably related to plaintiffs' lawsuit, spanning hundreds of river miles away from the closest bellwether Plaintiff.  These areas are reasonably related to Plaintiffs' lawsuit, are closer than hundreds of river miles away from the closest bellwether Plaintiff and are directly relevant to claim accrual and the cumulative effect of river control structures based on the allegations in the complaint

4

Plaintiffs disagree that this interrogatory overly broad in that there is no limit to time period or specific river training structures. Plaintiffs do not have to limit the time period or specifically identify each and every structure visible or submerged, Defendant has this information readily available.  The information sought by this Interrogatory is directly relevant to claim accrual and the cumulative and latent effect of river control structures based on the allegations in the complaint. Defendant has requested documents and information from periods that span many decades.

Plaintiffs disagree with the United States' objection that to the extent there is publicly available information already accessible to plaintiffs and to the extent information is not readily accessible due to the COVID-19 pandemic.  Defendant may not shield itself from answering interrogatories based on information it believes to be publicly available or based off a new and novel objection to responding to interrogatories, the COVID-19 pandemic objection.  COVID-19 does not alleviate or limit any Defendants' obligations to respond to discovery.  The information sought by this interrogatory is directly relevant to claim accrual and the cumulative and latent effect of river control structures based on the allegations in the complaint.

Plaintiffs disagree with the United States objection that to the extent this request seeks information outside the scope of jurisdictional fact discovery relating to the eight bellwether plaintiffs.   The information sought by this Interrogatory is directly relevant to claim accrual and the cumulative and latent effect of river control structures based on the allegations in the complaint.

Plaintiffs disagree with Defendant's response that it has produced documents and will further supplement its production of documents as needed, with information responsive to this interrogatory for portions of the river adjacent to the bellwether plaintiffs' parcels, as well as for the Middle Mississippi River up to mile marker 195 is deficient.  Defendant may not pick and choose which documents to produce, it must produce them all – not just those adjacent to the bellwether Plaintiffs' parcels and limited in scope to mile marker 195.  Defendant has an ongoing obligation to supplement discovery.  The information sought by this Interrogatory is directly relevant to claim accrual and the cumulative and latent effect of river control structures based on the allegations in the complaint.

Furthermore, Defendant's production of February 17, 2021 was not in a form accessible to Plaintiffs.  Plaintiffs could not access this production until April 26, 2021 and only after Plaintiffs were able to upload those documents to a discovery platform over a week later were Plaintiffs able to start reviewing those documents.  On July 1, 2021, defendant supplemented its production again with another voluminous production pursuant to its objections.  Defendant's production remains deficient.  These deficient, inaccessible, and delinquent productions have prejudiced Plaintiffs in their ability to timely investigate the voluminous productions by the discovery deadline.

**INTERROGATORY NO. 4:**  Identify each river training structure on the Ohio River from Cairo, Illinois to the Smithland Lock and Dam (Ohio River mile marker 981 to 918.5), including

the mile marker, length of the structure, the height of the structure above sea level, and the date the structure was completed.

**Defendant's Objection:**  In addition to the general objections, which the United States incorporates by reference, the United States objects that this interrogatory is vague, overbroad, and unduly burdensome as it is unclear what "completed" means and there is no limit to time period or specific river training structures.  The United States also objects to the extent there is publicly available information already accessible to plaintiffs and to the extent information is not readily accessible due to the COVID-19 pandemic.  The United States further objects to the extent this request seeks information outside the scope of jurisdictional fact discovery relating to the eight bellwether plaintiffs.   Subject to and without waiving any objections, the United States responds by referring Plaintiffs to the 6,267 documents produced on February 17, 2021.  The United States also responds that any heights above sea level provided are approximate.  The potentially responsive 13 documents include, but are not limited to, the following: US_0086444 – US_0086507 and US_0086616 – US_0087015.

**Plaintiffs' Response:** Plaintiffs disagree that this interrogatory is vague, overbroad, and unduly burdensome.  To the extent the Defendant objects because it is unclear what "completed" means it may consult Websters Dictionary or its own records to determine what "completed" means and when said projects were completed.  Furthermore, the completion date is directly relevant to claim accrual based on the allegations in the complaint and Defendant's argument that Plaintiffs' claims are untimely.

Plaintiffs disagree that this interrogatory overly broad in that there is no limit to time period or specific river training structures. Plaintiffs do not have to limit the time period or specifically identify each and every structure visible or submerged, Defendant has this information readily available.  The information sought by this Interrogatory is directly relevant to claim accrual and the cumulative and latent effect of river control structures based on the allegations in the complaint

Plaintiffs disagree with the United States' objection that to the extent there is publicly available information already accessible to plaintiffs and to the extent information is not readily accessible due to the COVID-19 pandemic.  Defendant may not shield itself from answering interrogatories based on information it believes to be publicly available or based off a new and novel objection to responding to interrogatories, the COVID-19 pandemic objection.  COVID-19 does not alleviate or limit any Defendants' obligations to respond to discovery.  The information sought by this interrogatory is directly relevant to claim accrual and the cumulative and latent effect of river control structures based on the allegations in the complaint.

Plaintiffs disagree that The United States my limit its response pursuant to its objection and limit it its response to "[t]he potentially responsive" 13 documents include, but are not limited to, the following: US_0086444 – US_0086507 and US_0086616 – US_0087015.  Either the response is complete, or it is deficient, there is no "potentially responsive" production. The information sought by this interrogatory is directly relevant

to claim accrual and the cumulative and latent effect of river control structures based on the allegations in the complaint

**INTERROGATORY NO. 5:**  Identify each lawsuit brought since 2010 that alleged a taking by flooding against the United States and the disposition of those claims.

> **Defendant's Objection:**  In addition to the general objections, which the United States incorporates by reference, the United States objects that the information sought by this interrogatory is outside the scope of jurisdictional fact discovery.  The United States also objects because the interrogatory seeks publicly available information already accessible to plaintiffs.  The United States further objects to this interrogatory on the ground that is overly broad, unreasonably burdensome, and disproportionate to the needs of the case.

> **Plaintiffs' Response:**  The information sought by this interrogatory is directly relevant to claim accrual and the cumulative and latent effect of river control structures based on the allegations in the complaint.  Furthermore, the information sought is relevant and could lead to the discovery of relevant and admissible evidence in the form of witnesses, deposition and trial testimony, admissions, documentary evidence, experts, expert reports and other tangible evidence and information relevant to claim accrual and the cumulative and latent effect of river control structures.

> Plaintiff disagrees that the information sought by this interrogatory is outside the scope of jurisdictional fact discovery.  The information sought is relevant and could lead to the discovery of admissible evidence in the form of witnesses, deposition and trial testimony, admissions, documentary evidence, experts, expert reports and other tangible evidence and information relevant to claim accrual and the cumulative and latent effect of river control structures.

> Plaintiff disagrees that this interrogatory seeks publicly available information already accessible to plaintiffs.  Only the parties to the lawsuit retain in their files certain information verses what is filed with the court.  The information sought is relevant and could lead to the discovery of admissible evidence in the form of witnesses, deposition and trial testimony, admissions, documentary evidence, experts, expert reports and other tangible evidence and information relevant to claim accrual and the cumulative and latent effect of river control structures.

> Plaintiff disagrees that this interrogatory is overly broad, unreasonably burdensome, and disproportionate to the needs of the case.  The Defendant can easily access litigation files for current and past litigation. These files are not available to Plaintiff.  There is no shield against discovery by interrogatories of the facts the defendant has acquired or the persons from whom defendant has obtained facts or the existence or nonexistence of documents from other litigation.

**INTERROGATORY NO. 7:**  Identify all changes you made to the management of the Mississippi and Ohio Rivers since 2010 and when you made those changes.

**Defendant's Objection:**  In addition to the general objections, which the United States incorporates by reference, the United States objects that this interrogatory is vague, overbroad, and unduly burdensome as it involves areas not reasonably related to plaintiffs' lawsuit, requesting information for the entire Mississippi and Ohio Rivers which span hundreds of river miles away from the bellwether plaintiffs, and it is unclear what "changes" and "management" mean.  The United States avers that it has not changed the way it manages the Mississippi and Ohio Rivers since 2010.  The United States also objects that this interrogatory seeks information outside the scope of jurisdictional discovery.  Subject to and without waiving any objections, the United States responds that the Olmsted Lock and Dam became operational in 2018, replacing an existing lock and dam system.  See also response to Interrogatory No. 4.  In addition, the United States refers plaintiffs to the 6,267 documents produced on February 17, 2021, which contain many documents related to the Corps' operations 15 on the Mississippi and Ohio Rivers.  Potentially relevant documents include, but are not limited to, the following: US_0086527-US_0086599, US_0045580-US_0045588.

**Plaintiffs' Response:**  Plaintiffs disagree that this interrogatory is vague, overbroad, and unduly burdensome. as it involves areas not reasonably related to plaintiffs' lawsuit, requesting information for the entire Mississippi and Ohio Rivers which span hundreds of river miles away from the bellwether plaintiffs.  Plaintiff is also requesting information for the spans of the Rivers adjacent to Plaintiffs' property, in addition to that upstream and downstream.  Defendant's response is deficient in that it has limited those responses to just the information Defendant conveniently deems to be relevant.   The information sought by this interrogatory is directly relevant to claim accrual and the cumulative and latent effect of river control structures based on the allegations in the complaint.

Plaintiffs disagree that this interrogatory is unclear what "changes" and "management" mean.  The information sought by this interrogatory is directly relevant to claim accrual and the cumulative and latent effect of river control structures based on the allegations in the complaint.

**B.  Defendant's Objections to Plaintiffs' Request for Production**

Plaintiffs set forth each discovery request in issue, along with the Government's

objections (attached as **Exhibit B**) and Plaintiffs' detailed responses to each objection (attached

as **Exhibit A**).

## IV.    ARGUMENT

### A.  Defendant's Interrogatory Responses Are Deficient.

#### i.    Defendant's Objections to Plaintiffs' Interrogatories Are Improper

Plaintiffs move to compel complete answers to four interrogatory requests that seek information about river training structures on Mississippi River (No. 3), river training structures on Ohio River (No. 4), flooding lawsuits since 2010 (No. 5), and changes to river management since 2010 (No. 7). The Government objects to each of these four requests as "vague, overbroad, and unduly burdensome" either because the "interrogatory seeks publicly available information already accessible to plaintiffs," because the information sought is "outside jurisdictional discovery" or involves "areas not reasonably related to plaintiffs' lawsuit." These are conclusory objections with no explanation for why they apply to Plaintiffs' requests. A party objecting on the grounds of undue burden must show with specificity how the request is overbroad. *See AAB Joint Venture v. United States,* 75 Fed. Cl. 448, 457-58 (2007) (citations omitted).

In its objection to Interrogatory No. 4, the Government refers to thirteen "potentially responsive" documents without producing them. A document is either responsive or it is not. It is not proper for the Government to calculate the degree of responsiveness of the documents under its control and withhold the documents that do not meet some unilaterally imposed threshold of potential use to Plaintiffs. Defendant additionally complains that it does not know the meanings of the words "completed" (Nos. 3 and 4), "changes" (No. 7) and "management" (No. 7), and it cannot produce documents in response to requests that employ those words. These are everyday words with ordinary dictionary definitions. The Government should not be permitted to withhold information by feigning incomprehension.

ii.        **Defendant Does Not Properly Invoke RCFC 33(d)**

In lieu of providing a direct answer to an interrogatory, RCFC 33(d) allows the

responding party the option to produce business records "if the burden of deriving or ascertaining

the answer [from the business records produced] will be substantially the same for either party."

RCFC 33(d) further states that the responding party must "specify [] the records that must be

reviewed, in sufficient detail to enable the interrogating party to locate and identify them as

readily as the responding party could." RCFC 33(d)(1). The government does not meet the

requirements to properly rely on RCFC 33(d) in its answers to interrogatory Nos. 3, 4 and 7.

Defendant has not shown that "the burden of deriving or ascertaining the answer [from

business records produced] will be substantially the same for either party." RCFC 33(d). First,

the government will have already been required to review all potentially responsive documents

for privilege and confidentiality. The court in *In re Sulfuric Acid* found that the burden on the

producing party to review the documents produced was "not as great [as the burden on the

requesting party], since the [producing party was] more familiar with the documents than the

[requesting party]." *In re Sulfuric Acid Antitrust Litig.*, 231 F.R.D. 351, 364 (N.D. Ill. 2005).

Here, the government would have already reviewed all documents for privilege and

confidentiality. Moreover, as the government recognized in its response to Plaintiffs' motion to

extend jurisdictional fact discovery, only three attorneys have been tasked with sifting through

the governments voluminous production for the plaintiffs, yet the government has over twenty-

one people working on responding to Plaintiffs discovery requests, likely with each person

assigned a specific agency or topic. Exhibit L. Thus, it would ***not*** be more burdensome for the

government to identify the documents that are responsive to Plaintiffs' requests, particularly

10

when the government has specialized knowledge of the agencies and documents and must review the documents as a matter of course before producing them.

Finally, even if the government has made the threshold showing that the burden of deriving answers to plaintiff's interrogatories would be substantially the same for either party, which it has not, the government does not meet the specificity requirement of RCFC 33(d)(1). "Federal courts have strictly construed [RCFC 33(d)(1)] to require a responding party to specifically direct the requesting party to the documents which contain the answers to the interrogatory." *AAB Joint Venture v. United States* (AAB Joint Venture), 75 Fed. Cl. 448, 452 (2007). RCFC 33(d)(1) mirrors RCFC 33(d). The Advisory Committee Notes to FRCP 33(d) explain that responding to an interrogatory "by directing the interrogating party to a mass of business records or by offering to make all of [the producing party's] records available" is "an abuse of the option" authorized under FRCP 33. FRCP 33, Notes of Advisory Committee, 1980 Amendment. Here, the government has responded to the interrogatories at issue by stating, in part, "**The United States' production on February 17, 2021, which included 6,267 documents, contains many documents with information responsive to this interrogatory including, but not limited, to** the following. . ." or "**Potentially relevant documents include, but are not limited to**. . ." Exhibit A (emphasis added). It is well established that a broad reference to a set of documents does not meet the specificity requirement of RCFC 33(d). *AAB Joint Venture*, 75 Fed. Cl. at 452. ("A simple offer to produce unspecified documents or a general reference to a pile of documents will not suffice. Here, Defendant refers broadly to all documents produced in response to requests for production of documents by Plaintiffs, Clearly, Defendant has not met its duty of specificity in order to rely on RCFC 33(d) in answering Plaintiff's interrogatories."); see also *In re Sulfuric Acid*, 231 F.R.D. at 366 ("[Defendants have

produced perhaps a million pages of documents and merely referred plaintiffs, generally, to them for [some of] the answers to their interrogatory. This is an 'abuse of the option.'") The government knows this.

Therefore, in this case, where the government reviewed the production for confidentiality and privilege, yet only identified a handful of responsive documents and has instead directed plaintiffs to its entire production that may (or may not) contain responsive information, the government has clearly misused the option provided for in RCFC 33(d) to respond to Plaintiffs' interrogatories. The government should be ordered to answer Plaintiffs' interrogatories in full.

**B. Defendant's Document Production is Deficient.**

**i.    Defendant's Objections to Plaintiffs' Requests for Production Are Improper**

Plaintiffs are forced to move to compel discovery on forty-five (45) Requests for Production to which the Government has objected. As with the interrogatory requests, Defendant improperly resorts to a global objection of "overly broad and unduly burdensome" to all but a fraction of the requests. *See AAB Joint Venture v. United States,* 75 Fed. Cl. at 457-58 (citations omitted). Defendant's objections also point Plaintiffs to "publicly available information" or "public websites" suggesting "the information sought can be obtained from some other source that is more convenient, less burdensome, and less expensive" instead of producing the documents within its possession. (Nos. 2, 3, 5-8, 16, 25-28, 31, 32, 40, 42, 43). With respect to over half of Plaintiffs' requests, the Government dismissed its obligation to respond by characterizing the requests as "outside the scope of jurisdictional fact discovery," without any attempt to specify why the requested information is unrelated to the accrual of Plaintiffs' claims. (Nos. 10, 11-24, 27-30, 33, 35, 36, 38-42).

In response to numerous requests, the Government objected that the material is "classified or highly sensitive" and "not subject to public disclosure for security reasons." (Nos. 14, 15, 31, 34, 37, 44). This is improper. If the Government asserts a security rationale for withholding documents in its possession, it must produce a privilege log identifying the documents it is withholding so that Plaintiffs can determine whether those documents are relevant to the timeliness of Plaintiffs' claims. *Cf. AAB Joint Venture v. United States,* 75 Fed. Cl. at 455.

In Request for Production No. 40, Plaintiffs asked Defendant to produce all documents that discuss, refer, or relate to Executive Order 11988, compliance with Executive Order 11988, or any response to Executive Order 11988 as it relates to any government action affecting the Mississippi or Ohio River within certain specified mile markers.[1] The information contained in any document related to Executive Order 11988 is highly relevant to claim accrual as it may shed light on the timing of government actions and when the government officials had reason to believe that those actions might affect property rights. Moreover, the rivers identified in this request all have similar engineering and contain structures that were built in various time periods. Documents related to compliance with Executive Order 11988 are likely to be highly revealing about other sections of the rivers and are certainly likely to lead to the discovery of other relevant documents and information. Nevertheless, the Government trotted out its habitual litany of objections to Request No. 40: overbroad, unduly burdensome, outside the scope of

---

[1] In 1988 the President issued Executive Order 12630 (EO), "Governmental Actions and Interference with Constitutionally Protected Property Rights," to ensure that government actions are undertaken on a well-reasoned basis with due regard for the potential financial impacts imposed on the government by the Just Compensation Clause of the Fifth Amendment. See https://www.fs.fed.us/emc/nepa/oged/includes/eo_12630.pdf

jurisdictional fact discovery, available to the public, and objectionable "to the extent such documents are in the possession of third parties."[2]

In Request for Production No. 41, Plaintiffs similarly asked Defendant to produce all documents that discuss, refer, or relate to Executive Order 12630, compliance with Executive Order 12630, or any response to Executive Order 12630 as it relates to any government action affecting the Mississippi or Ohio River within certain specified mile markers. Plaintiffs disagree that this request is overbroad.  The Government has asserted that the Plaintiffs "must identify, within reasonable limits, what governmental action or actions allegedly caused the taking of a specific plaintiff's land."  Executive Order 12630 requires the government to identify government action or actions that may cause a taking of property. The presence of any discussion of impacts on property rights in the region—or in regions with similar river engineering—is highly relevant to Plaintiffs' claim accrual. Such acknowledgments are revelatory of the timing of government action and when there was reason to believe that those actions might affect property rights. At the very least, documents responsive to Request for Production No. 41 are

---

[2] The United States issued a supplemental response on February 17, 2022.

SUPPLEMENTAL RESPONSE TO REQUEST NO. 41: In addition to the general objections, the United States objects that this request is vague, overbroad, unduly burdensome as it involves nearly 500 river miles without any meaningful limitation on time or type of regulation as defined in Executive Order 12630. Similarly, the United States also objects that "any government action" is oppressively broad and vague. Although the United States continues to believe this request for production is outside the scope of jurisdictional fact discovery, the United States responds that it has conducted a reasonably diligent search for documents related to Executive Order 12630 and river training structures over the portions of the rivers adjacent to the bellwether plaintiffs' parcels, as well as for the Middle Mississippi River up to mile marker 195. There are no responsive documents. Exhibit M.

The United States has seemingly still not responded or produced document relating to other areas in the request. For example the Ohio River from mile marker 981 to 918.5.

likely to lead to the discovery of other relevant documents and information. The Government's objection to Request No. 41 as vague, overbroad, unduly burdensome, and outside the scope of jurisdictional fact discovery should not be permitted to stand. It is not clear the extend the Government still objects to this interrogatory or whether the government has only searched for documents it believes related "to portions of the rivers adjacent to the bellwether plaintiffs' parcels, as well as for the Middle Mississippi River up to mile marker 195" and not any other section of the river specified in the request. See Exhibit M.

Plaintiffs have set forth a detailed response to each of Defendant's objections, explaining how the information sought is directly relevant to their claim accrual and the cumulative and latent effect of river control structures based on the allegations in the complaint. Exhibit A. The information sought could lead to the discovery of relevant and admissible evidence in the form of witnesses, deposition and trial testimony, admissions, documentary evidence, experts, expert reports, and other tangible evidence and information relevant to claim accrual and the cumulative and latent effect of river control structures. All requests are reasonably related to claim accrual and should be compelled.

### ii.   Defendant Must Organize and Label Documents to Correspond to the Categories in the Request for Production

The enormous volume of documents produced to Plaintiffs does not cure the Government's inadequate production.  The "pertinent metric with respect to discovery responses is not their sheer volume, but rather their completeness or lack thereof." *Perfect Form Mfg. LLC v. United States*, 142 Fed. Cl. 778, 787 (2019). During discovery thus far the Government has produced approximately 10,649 digital documents, comprised of tens-of-thousands of pages, over a third of which were produced in the final six weeks of discovery. Plaintiffs have repeatedly advised the United States that its document productions were insufficient because

they were not organized and labeled in any consistent or useful way and did not correspond to any of Plaintiffs specific document requests. The Government's refusal to sort or label its belated and massive document productions, as required by RCFC 34, has made it exceedingly burdensome, time-consuming, and expensive for the Plaintiffs to access or analyze the documents in any meaningful way.

The Government has disadvantaged Plaintiffs by producing documents in an inaccessible format (documents produced on February 17, 2021, could not be accessed until April 26, 2021, and later) and without specifying which documents were responsive to which of Plaintiffs' requests. RCFC 34 requires the Government to organize and label documents to correspond to the requests when those documents are not kept in the ordinary course of business— which these documents are not. In responding to requests for production of documents, RCFC 34 requires "[a] party [to] produce documents as they are kept in the usual course of business or [to] organize and label them to correspond to the categories in the request[.]" RCFC 34(b)(2)(E)(i). This requirement creates an "either/or" standard where all documents produced as they are kept in the usual course of business do not need to be organized and labeled. S*ee Hagemeyer N. Am., Inc. v. Gateway Data Scis. Corp.*, 222 F.R.D. 594, 598 (E.D.Wis.2004). ("Above all, documents should not be haphazardly produced") *SEC v. Collins & Aikman Corp.*, 256 F.R.D. 403, 411 (S.D.N.Y.2009); see also *Wagner v. Dryvit Sys., Inc.*, 208 F.R.D. 606, 610–11 (D.Neb.2001) ("producing large amounts of documents in no apparent order does not comply with a party's obligation under Rule 34.").

There has been no attempt to designate which documents are responsive to which requests except for a dozen or so documents in the Government's first production. See Exhibits H, I, J, and K. The Government has repeatedly stated that they are not required or organize,

label, or produce a usable discovery log because these documents are kept "in the usual course of business" without explaining how that can be so. As can be deduced from the production and the accompanying spreadsheets, documents from various agencies, documents that relate to different matters, and documents that are in completely different formats are all jumbled together. See Exhibit I. For example, one production had hundreds of historic newspaper clippings with official studies concerning the Olmsted Locks and Dam project mixed in. Moreover, what the government is provided with each production, including the metadata, is inconsistent. The only label on any of these documents is the title of the document, which is not helpful in determining which request the document is responsive to.

The Southern District of New York required the producing party, which failed to produce documents in the ordinary course of business, to respond to discovery requests by organizing and labeling their document production, including metadata and tagging information performed by the producing party. *S.E.C. v. Collins & Aikman Corp.*, 256 F.R.D. 403, 411 (S.D.N.Y. 2009).  In *Collins & Aikman Corp.*, the defendant asked the SEC to produce documents for 54 separate categories relating to the agency's investigation of the company. *Id.* at 406. The SEC then produced 1.7 million unorganized documents with different and inconsistent metadata. *Id.* at 407 The defendant argued that providing the documents without the file folders or tagged information constitutes a "document dump." *Id.* at 408. The Court held that Rule 34 requires production to be "useful to the requesting party" and not "inject unnecessary time and cost into litigation." *Id.* at 411. Then, because the documents were maintained in disorderly databases and could not be provided in a useful manner, the Court required the SEC to organize and label the production to respond to each demand and to produce the folders arranged by the SEC to correlate with different allegations in the case. *Id.* at 413.

And even when voluminous documents are produced in the usual course of business under Rule 34, which these documents were not, the documents must be accompanied by indices to guide the requesting party to the responsive documents. *See Renda Marine, Inc. v. United States*, 58 Fed. Cl. 57, 64 (2003). Or if a producing party "ha[s] been 'overly generous' in identifying responsive documents so as to unduly burden Plaintiffs in their search of the documents, the Court [will] similarly require [the producing party] to organize and label documents as responsive to Plaintiff's requests." *Williams v. Taser Int'l, Inc.*, No. CIVA1:06-CV-0051-RWS, 2006 WL 1835437, at *7 (N.D. Ga. June 30, 2006).

In *Graske v. Auto-Owners Ins. Co.*, the court held that the production of 7,000 pages organized in the ordinary course of business was not in compliance with Rule 34 because they were not accompanied by indices or other tools to guide the plaintiffs to the responsive documents. *Graske v. Auto-Owners Ins. Co.*, 647 F. Supp.2d 1105, 1108 (D.Neb. 2009). Because the producing party was more familiar with the records than the requesting party and there was no sufficient guidance on how to locate responsive documents, the court ordered the producing party to serve supplemental responses with more detailed information. *Id.* at 1109.

Likewise, this Court in *Goodeagle v. United States* required the government to produce responsive documents, organized and labeled in a way that complies with RCFC 34, when the government made no attempt to designate which documents are responsive to which request. *Goodeagle v. United States*, 124 Fed. Cl. 43, 45 (2015).

The government's deficient, inaccessible, unorganized, and delinquent productions have prejudiced Plaintiffs in their ability to timely investigate. Not only are the document productions inaccurate and inconsistent, but the metadata has also been inaccurate and inconsistent, when not non-existent and unusable. *See* e.g. Exhibit K. Metadata should enable the receiving party to

18

have the same ability to access, search, and display the information as the producing party. *See The Sedona Principles: Best Practices Recommendations & Principles for Addressing Electronic Document Production (Second Edition)*. Many courts, including the Federal Circuit, have found the Sedona Conference guidance instructive in applying discovery rules. *See CBT Flint Partners v. Return Path, Inc.*, 737 F.3d 1320 (Fed. 2013); *Pueblo of Laguna v. United States*, 60 Fed. Cl. 133, 138 (Fed. Cl. 2004). Because disorganized and unusable data dumps like this are precisely the result RCFC 34 is intended to avoid, this Court should require the Government to re-produce those documents organized and labeled to correspond to the categories of documents the Plaintiffs requested.

### iii.   The Government Should Also be Required to Identify and Remove any Non-Responsive Documents or Documents That Have no Relevance to this Litigation

Under RCFC 34(b)(2)(E), a party responding to a document request must either "produce documents as they are kept in the usual course of business" or "organize and label them to correspond to the categories in the request." This rule "was designed to prevent the specific discovery abuse of parties deliberately mixing critical documents with others in the hope of obscuring the documents' significance." *Renda Marine, Inc. v. United States*, 58 Fed. Cl. 57, 63 (2003) (quotations omitted).

Attorneys must take some effort to review or limit its production to information potentially relevant to the case. Likewise, "a producing party may not bury those relevant documents in the hope that opposing counsel will overlook the proverbial 'smoking gun' as he wades through an ocean of production." See *Reedhycalog UK, Ltd. v. United Diamond Drilling Services, Inc.*, Case 6:07-cv- 00251-LED, *4 (E.D. Tex. 2008). As stated by one court, "[w]hen producing documents, the responding party cannot attempt to hide a needle in a haystack by

mingling responsive documents with large numbers of nonresponsive documents." *Hagemeyer N. Am., Inc. v. Gateway Data Sciences Corp.*, 222 F.R.D. 594, 598 (E.D. Wis. 2004). Another court put it more colorfully, stating that the producing party cannot simply hand over a large number of documents and tell the other side to "go fish." See *Residential Constructors, LLC v. ACE Prop. & Cas. Ins. Co*, 2006 WL 1582122, at *2 (D. Nev. June 5, 2006).

When a producing party mixes responsive and non-responsive documents, whether in bad faith or not, it creates the proverbial "needle in a haystack" that discovery rules intend to prevent. *See Ak Chin Indian Community v. United States*, 85 Fed. Cl. 397, 400 (2009). As this Court has held, where the Government's poor organization of documents resulted in a production of nonresponsive documents, the Government should be "required to sort through voluminous amounts of documents and produce only documents that are responsive to [the] requests." *Osage Tribe of Indians of Oklahoma v. United States*, 87 Fed. Cl. 338 (2009).

In *Montania v. Aetna Cas. & Sur. Co.,* the court issued sanctions against the producing party for producing irrelevant and nonresponsive documents. The court explained that "[e]fficient conduct of discovery requires some exertion on the part of counsel to see to it that what they produce is responsive to the requests the other side has made." *Montania v. Aetna Cas. & Sur. Co.*, 153 F.R.D. 620, 621 (N.D. Ill. 1994). The court further stated that the production of irrelevant documents for inspection is "properly sanctionable for any substantial waste of time caused by his negligent production of irrelevant materials." *Id.* at 621 As a result, the court required the plaintiff to issue a further response indicating what documents are responsive to which document request—along with payment of costs—because the defendant "should not be required to guess which documents relate to which request." *Id.*

The Government's actions in this case are precisely the type of discovery abuse Rule 26(g) is designed to prohibit, and the unnecessary delays and needless costs are exactly the outcomes the rules intend to prevent. The Government produced thousands of documents in this case, and many of these documents are completely unrelated to Plaintiffs' claims or to any discovery requests made by the Plaintiffs. The documents are related to different projects and from various agencies with responsive documents mixed in the middle.

Since the Government has not separated the responsive from the nonresponsive documents in its production, the Plaintiffs should not be required to conduct the time- consuming and costly task of separating the relevant from the irrelevant documents. Since the Government's own poor organization of documents and failure to cull through the produced documents has created this problem, the Government should be required to resolve the problem by providing to the Plaintiffs information that will advise them what additional documents are non-responsive and irrelevant to this litigation.

**C. Defendant Should Bear the Costs Incurred to Bring this Motion.**

RCFC 37(a) provides for reimbursement of reasonable expenses, including attorney's fees, upon the granting of a motion to compel unless the Court finds that the opposition was substantially justified. *See Precision Pine & Timber, Inc. v. United States*, No. 98-720 C, 2001 WL 1819224, at \*4 (Fed. Cl. Mar. 6, 2001).  Undersigned counsel has sent letters, emails, and engaged in repeated phone conferences in attempts to resolve all issues regarding discovery requests, but all to no avail. The goal of imposing costs and fees is to deter precisely this type of dilatory conduct in responding to discovery and to compensate moving party for the additional expense. *See Fairholme Funds, Inc. v. United States*, 132 Fed. Cl. 391, 392-93 (2017) citing *Precision Pine & Timber, Inc. v. United States*, No. 98-720 C, 2001 WL 1819224, at \*9. The

Government's recalcitrance necessitated this Motion to Compel. Plaintiffs' costs should be borne by Defendant.

## CONCLUSION

Based on the forgoing, the Plaintiffs ask the Court to compel the Government to provide full and complete responses to (1) Plaintiff's First Set of Interrogatories and Plaintiffs' First Request for Production, (2) require the Government to organize and label the previously produced documents to correspond to the Plaintiffs requests for production, and (3) provide the Plaintiffs information that will advise them which documents are non-responsive. Plaintiffs further ask this Court to award reasonable costs and fees incurred in bringing this Motion under Rule 37.

Dated: March 10, 2022

FLINT LAW FIRM, LLC

*/s/ Ethan A. Flint*
ETHAN A. FLINT
222 E. Park St., Suite 500
P.O. Box. 189
Edwardsville, IL 62025
(618) 288-4777
(618) 288-2864 (facsimile)
eflint@flintlaw.com
ariley@flintlaw.com

ATTORNEYS FOR PLAINTIFFS

## CERTIFICATE OF CONFERENCE

I hereby certify that Plaintiffs have attempted to resolve this discovery dispute in good faith

without involvement of the Court in accordant with RCFC 37(a)(1).

FLINT LAW FIRM, LLC

*/s/ Ethan A. Flint*_____
ETHAN A. FLINT
222 E. Park St., Suite 500
P.O. Box. 189
Edwardsville, IL 62025
(618) 288-4777
(618) 288-2864 (facsimile)
eflint@flintlaw.com